## Isaac Smith *vs.* Ebenezer Frye.

*Mem.* — The argument in this case was had before *Shepley J.* was a member of the Court.

Regularly, exceptions should be signed by the party excepting, or by his counsel; but if this be omitted, and the exceptions are allowed and signed by the Judge, no advantage can be taken afterwards of the omission.

A judgment of the Court of Common Pleas will not be reversed, because the Judge directed a nonsuit, without the assent of the plaintiff, or his counsel, when the evidence offered on his part, would not by law enable him to maintain his action.

Where a guaranty is written over the name of the payee of a note, indorsed in blank, without his knowledge or consent, such note cannot be given in evidence under the money counts.

While such guaranty remains written over the name of the payee, parol evidence is inadmissible to charge him as indorser.

This was a writ of error, brought to reverse a judgment of the Court of Common Pleas in an action commenced originally by the plaintiff in error, before a Justice of the Peace. At the trial in the Court of Common Pleas, the plaintiff offered to prove, that, although the note was indorsed by *Frye* in blank, he promised at that time to be responsible, at all events, for its payment. This evidence was objected to, and the Judge decided, that it was improper evidence on either count in the declaration. It appeared in evidence, that when *Frye* indorsed and delivered the note to the agent of the plaintiff, the name only was written upon it, and that the writing over it was made afterwards without the knowledge or consent of *Frye*. The Judge decided, that the writing above the name could not be read in evidence on either count in the declaration. The Judge directed a nonsuit, and the plaintiff excepted. The original declaration, the note on which the action was founded, the errors assigned, and the facts in the case, sufficiently appear in the opinion of the Court.

*S. W. Robinson*, argued for the plaintiff in error, and cited *Jones* v. *Fales*, 4 *Mass. R.* 245; *Widgery* v. *Monroe*, 6 *Mass. R.* 449; *Boyd* v. *Cleaveland*, 4 *Pick.* 525; *Fuller* v. *McDonald*, 8 *Greenl.* 213; *Taunton Bank* v. *Richardson*, 5 *Pick.* 436; *Bayley on Bills*, 182, *note* 108; *State Bank* v. *Hurd*, 12 *Mass. R.* 172.

*Boutelle*, argued for the defendant, and cited *Oxford Bank* v. *Haynes*, 8 *Pick.* 423.

The action was continued *nisi*, and again at the *May* term, 1837, and the opinion of the Court was afterwards drawn up by

EMERY J. — The plaintiff in error seeks to reverse a judgment of the Court of Common Pleas, rendered upon a nonsuit directed by that Court.

The declaration in the original suit, which was before a Justice of the Peace, contains five counts; one for nine dollars forty-three cents, on an account annexed for freight of leather and passage to *Boston*; another count for fifteen dollars, for so much money had and received; a third count for the like sum of fifteen dollars for so much money paid, laid out, and expended; the fourth count is, for that one *Bailey*, on the 23d of *Feb.* 1827, by his note of that date, for value received promised the said *Eben'r Frye* to pay him or order the sum of nine dollars and forty-three cents in sixty days and interest, and thereafterwards, to wit, on the same day, said *Frye*, for value received, by his indorsement on the back of said note, promised the plaintiff to guaranty the payment of said note to him according to its tenor; and the plaintiff avers that the said note never was paid to him by said *Bailey*; whereby, &c. The fifth count was like the fourth, on a certain other note of the like sum and date, given by *Bailey* to *Frye* or order in sixty days and interest; and said *Frye* afterward, on the same day, for a valuable consideration, promised the plaintiff to guaranty the payment of the same note to him, and that he, the said *Frye*, would pay the contents of said note to the plaintiff, if the said *Bailey* did not, and the plaintiff avers, that the said *Bailey* did not at any time pay the said note to him; whereby, &c.

This fifth count was an amendment entered by consent. The general issue was pleaded and joined.

The plaintiff offered to introduce in evidence a note from *Bailey* to said *Frye* of the same tenor and date, as described in the 4th and 5th counts, having the following indorsements written on the back thereof: " Pay to *I. Smith*, and I guaranty the payment of the within to said *Smith*, and promise to pay the contents to him, if the within do not. *Ebenezer Frye*."

After a lapse of between eight and nine years, subsequent to the rendition of the judgment, a writ of error is sued out, and the plaintiff has assigned the five following errors :

*First Error.* — For that at the trial of said original action the plaintiff, having offered in evidence the note declared on, which was of the following tenor, to wit, " *Augusta,* 23*d Feb.* 1827. For value received of *Eben'r Frye,* I promise to pay him or order nine dollars, forty-three cents in sixty days and interest. (Signed) *Caleb P. Bailey,*" with the following indorsement, to wit, " Pay to *I. Smith,* and I guaranty the payment of the within to said *Smith,* and promise to pay the contents to him if the within do not. (Signed) *Eben'r Frye*", and it appearing that at the time said note was passed to the plaintiff, the said indorsement was in blank, and the guaranty over said *Frye's* name filled up afterwards without his knowledge or assent, the presiding Judge refused to permit the writing above said *Frye's* name to be read in evidence, notwithstanding the plaintiff offered to prove by parol evidence that said *Frye* agreed to be responsible to the plaintiff at all events for said note, and that said *Bailey* should call and pay it without giving the plaintiff any trouble whatever ; whereas he ought to have permitted said writing to be read in evidence.

*Second Error.*—For that the plaintiff, having at said trial offered to prove by parol evidence, that he held a note against said *Frye* of the same amount as the one offered in evidence, which he left with his agent for collection ; that *Frye* soon after called on the agent and stated to him that he had a note of the same amount against one *Bailey,* and if the agent would take it, *Bailey* would call and pay it without giving the agent or plaintiff any trouble, and if *Bailey* did not, he, the said *Frye,* would at all events be responsible for the payment ; that upon this understanding, the agent took the note against *Bailey,* which said *Frye* indorsed at the time with his name, and gave up to *Frye* the plaintiff's note ; that the agent never knew any thing about *Bailey,* nor made any inquiries about him, relying solely on *Frye's* engagement to pay the note ; that the arrangement was made solely at *Frye's* request, and for his accommodation ; and that the plaintiff's note was given up to *Frye* only in consideration of *Frye's* agreement to be responsible at all events for the payment of *Bailey's* note : yet the presiding

Judge refused to admit said evidence, but directed a nonsuit; — whereas he ought to have permitted the evidence offered to go to the jury.

*Third Error.* — Because the presiding Judge directed, that the plaintiff should be nonsuited ; — whereas he ought to have submitted the cause to the jury, and admitted the evidence offered by the plaintiff.

*Fourth Error.* — Because the presiding Judge refused to admit the evidence offered by the plaintiff, as stated. under the second assignment of error ; — whereas he ought to have allowed the same to go to the jury, and to have instructed them that it was competent for the plaintiff to prove by parol, that the said *Frye* had agreed to waive demand and notice on said note ; that they would be authorized to infer such waiver from the evidence offered, and that if said *Frye* did agree to waive demand on said *Bailey* and notice to himself, then the action was well maintained.

*Fifth Error.* — Because the Judge refused to admit the said evidence as proper under either count in the plaintiff's declaration ; — whereas he ought to have ruled that it was admissible and proper, either to support the special counts upon the note itself, or the count for money had and received.

In the bill of exceptions, on . which the writ of error is brought, in addition to what is set forth in the assignment of errors, it is recited, that " it was admitted by the counsel for the plaintiff that the first note against said *Frye* was to be considered as paid by said transfer of the note against *Bailey,* and he declined to have the evidence admitted and the case put to the jury on that point, but insisted, that parol testimony might be introduced to show that at the time of the indorsement by the defendant of said note against *Bailey,* the defendant agreed at all events to guarantee the payment of said note to the plaintiff if the said *Bailey* did not. The Judge then refused to admit the testimony as proper on either count in the declaration, and directed a nonsuit."

At the *May Term,* 1836, said *Frye* comes, &c. and protesting that the bill of exceptions was not signed by the said *Smith,* or his counsel, at the Court when the action was tried, and the exceptions were not recorded on the records of said Court, and reserving to himself the benefit of this exception to the regularity of the record

Smith *v.* Frye.

and proceedings in this case, says, there is no error in said record and proceedings, and this, &c. by his attorney, and the plaintiff likewise by his attorney.

It does appear by the return of the presiding Judge, to the writ of error, under his seal, dated the twentieth day of *May*, 1836, that the said bill of exceptions, which is under his seal, was not signed by the plaintiff's counsel until this day, but was put on file, and not recorded.

In that bill of exceptions it is stated, that the "counsel for the plaintiff excepted to the opinion and direction of the Court in matter of law, and requested the Judge presiding in the cause, to put his seal to this bill of exceptions, this nineteenth day of *December*, *A. D.* 1827, before the final adjournment of said Court. Examined, and allowed, and sealed.—*Sam'l E. Smith, J. C. C. Pleas.*

We do not, under these circumstances, admit that the defendant in error is to derive any benefit from the exception, that the bill of exceptions was not signed by *Smith* or his counsel. It is sufficient that it was reduced to writing and presented to the Court before the adjournment thereof without day, if allowed by the Court. It may be most clerical and advisable for counsel always to sign the exceptions, which may be tendered to the Court for allowance. But by the *statute* of *Westminster,* 2, (13 *E* 1) if one impleaded before any of the Justices allege an exception, praying that the Justices will allow it, and if they will not, if he write the exception and require the Justices to put their seals to it, the Justices shall so do, and if one will not, another shall.

The truth of it can never be doubted after the bill is sealed, for the adverse party is concluded from averring the contrary, or supplying an omission in it. *Bul. N. P.* 315, 316.

We may, therefore, proceed to the examination of the errors assigned, in connection with what we find in the bill of exceptions.

The decisions in *New York,* in relation to this subject, are of this import.

If the evidence offered in this case would not authorize a jury to find a verdict for the plaintiff, or the Court would set it aside, if so found, as contrary to evidence, it would be the duty of the Court to confirm the nonsuit. 1 *Wend.* 379.

So if the plaintiff be nonsuited for a defect in his proof, as applied to one count of the declaration, he cannot avail himself of the objection on a bill of exceptions, that such proof entitled him to recover on another count ; unless it appear, that the attention of the Judge was directed to that fact at the trial ; but it is otherwise where the nonsuit has been ordered by the Court without motion of the defendant. 8 *Cowen,* 35 ; 2 *Wend.* 158.

It has been held in the Supreme Court of the *United States,* that the Circuit Court of *Georgia* District had no authority to order a peremptory nonsuit against the will of the plaintiff; and that he had a right to a trial by jury, and to have had the cause submitted to them. He might agree to a nonsuit, but if he did not so choose, the Court could not compel him to submit to it.

Justice *Johnson* dissented from this opinion, with not a little feeling. He " ordered the plaintiff below," he said, " to be nonsuited, because the evidence was so inadequate to maintain his suit, and had the jury found for him, he would have set the verdict aside and ordered a new trial." He further says, " I must submit, I suppose, but I cannot do it without protesting against the right of forcing upon my Circuit the practice of other Circuits in this mode. By a rule of this Court, it is unquestionably in the power of the Court to do it. But until then, I can never know what is the practice of my own Circuit, until I come here to learn it." 1 *Peters' S. C. Rep.* 469, *Doe on demise of Elmore* v. *Grymes et al.*

In the same Court, in the case of *De Wolf* v. *Rabaud et al.* 1 *Peters' S. C. Rep.* 497, after the evidence was closed in the Court below, the defendant moved for a nonsuit, which motion was overruled, and Justice *Story,* delivering the opinion of the Court, observed, " This refusal certainly constituted no ground for reversal in this Court. A nonsuit may not be ordered by the Court upon the application of the defendant, and cannot, as we have had occasion to decide at the present term, be ordered in any case without the consent and acquiescence of the plaintiff," referring to the case of *Elmore* v. *Grymes.*

In *Massachusetts,* in the case of *Mitchel et al.* v. *New England Marine Ins. Co.* 6 *Pick.* 117, where the defendants called for the survey, but the plaintiffs did not produce it, nor give any excuse for not producing it, and for that reason the defendants' counsel

moved, that the plaintiffs should be nonsuited, and the motion, at *nisi prius*, was overruled, and a verdict returned for the plaintiffs. The full Court, at the Law Term, said, "We are not clear, that the Judge had a right to order a nonsuit in the present case ; we should think that nonsuits have been entered rather by consent, upon the recommendation of the Judge, either with a view to raise a question of law, or because the counsel thought the action could not be sustained. A motion to nonsuit was not correct in point of form. But if there was a substantial ground for such application, the defendants should have a remedy."

It would seem that there is not a perfect uniformity in the practice of the different States on this subject.

In this State, in the action *Perley* v. *Little,* 3 *Greenl.* 97, the Chief Justice of the Court of Common Pleas directed a nonsuit, on the ground, that what was proved was not sufficient to take the case out of the statute of limitations, to which the plaintiff filed exceptions, alleging that the evidence was sufficient, and that the Judge had no authority to order a nonsuit without consent of the plaintiff, but should have submitted the evidence to a jury.

This Court, delivering its opinion through the late Chief Justice, say, "In a case like the present, we think that Court has a right to order a nonsuit ; because, if its opinion of the law is mistaken, and upon the facts proved by the plaintiff, the action is maintainaable, the error may be corrected, and the plaintiff be restored to his rights, by filing an exception to the order and decision of the Court, as was done in the present instance. We are of opinion the nonsuit was proper and that it must be confirmed."

In the argument, the counsel for the plaintiff in error stated, that the writing over the defendant's name "was probably written by the counsel at the trial, doubtless supposing he had a right so to do, and he conceded, that when the payee puts his name in blank, on the back of the note, it is considered as a contract in writing, not to be varied by parol evidence." Though the bill of exceptions does not communicate the manner and time, when the writing over the defendant's name was made, it is not inconsistent with the explanation thus presented to us. The precise time when *Bailey's* note was indorsed by *Frye,* is not stated, nor whether it was then over due, and the plaintiff's counsel argued, that as he gained

nothing by filling up the indorsement as he did, the contract should stand, as if nothing had been done. He cites the case of *Jocelyn v. Ames*, 3 *Mass. R.* 274, as justifying his position. " He did not contend that the defendant should be charged as guarantee, but that he should have been charged as indorser under the count for money had and received."

On behalf of the defendant in error, it is made a question, whether the plaintiff, having filled up the indorsement as for a guaranty. he can avail himself of the evidence to charge the defendant as indorser. And he urges, that the plaintiff has once made his election not to treat the defendant as indorser; and he attempts to distinguish this case from *Fuller* v. *McDonald*, because, he says, the writing in that case was after the note was payable. And he insists, that the error was not on the part of the Court, but on that of the plaintiff's counsel.

We consider that it is competent for a plaintiff to recover against an indorser upon the count for money had and received. 12 *Mass. R.* 172, *State Bank* v. *Hurd.* It certainly is *prima facie* evidence. 7 *Wheat.* 35, *Page's Admr.* v. *Bank of Alexandria.*

At the time of this trial, the fourth volume of *Pickering's Reports* was not published, so that neither party could have contemplated the case of *Boyd et al.* v. *Cleaveland*, cited by the plaintiff's counsel. And the case of *Fuller* v. *McDonald*, 8 *Greenl.* 213, which recognized and relied on *Boyd et al.* v. *Cleaveland*, as a strong authority, was not decided till 1832. The law, however, is to be deemed as existing long before.

But in *Boyd et al.* v. *Cleaveland*, 4 *Pick.* 525, the suit was against the defendant as indorser. At the time the note was indorsed and delivered to the plaintiff in payment for flour, one of the plaintiffs observed to the defendant, that he did not know any of the other parties to the note, had no confidence in them and should look wholly to the defendant. The defendant replied, that he should be in *New York*, when the note would become due, and would then take it up, if it were not paid by any other party to it.

The Court held, that the plaintiffs were not required to give notice of the non-payment by the maker; that the occasion of the promise was to be regarded. It was made to obviate a difficulty suggested by the plaintiffs, and the Court would not give it such a

construction, as would render it wholly nugatory. And though the defendant's counsel contended, that the promise was conditional, and that no conditional promise to pay, could amount to a waiver of the right to notice, yet it was thought immaterial, whether the promise was conditional or absolute, for a promise depending on a contingency is as binding, when the contingency happens, as an unconditional undertaking. But the radical difficulty in the present case is, that in looking at the whole proceedings we perceive an attempt improperly, though doubtless with no bad intention, to write over an indorser's name, without his knowledge or assent, a guaranty, which the law, under such circumstances, will not sanction. And though we may regret the omission to move for leave to cancel that writing, and substitute the proper one, no mention is made of any such motion. The papers come up to us with that writing of guaranty still remaining, as the foundation of the plaintiff's claim.

The Judge certifies in the bill of exceptions, that the plaintiff declined to have the evidence admitted, that the first note against *Frye* was to be considered as paid by the transfer of the note against *Bailey,* and the cause put to the jury on that point, but insisted that parol testimony might be introduced to show, that at the time of the indorsement by the defendant of the note against *Bailey,* the defendant agreed, at all events, to guaranty the payment of it to the plaintiff if *Bailey* did not. Upon this strenuous persisting on the part of the plaintiff to introduce parol evidence on the contract, still apparently remaining in writing, without any motion for leave to cancel it, we cannot say that the Judge erred. The regularity of practice required of the plaintiff a different course preliminary to the introduction of parol evidence, which might have availed him, as evidencing a waiver of the right to insist on demand and notice, had there been only a common and ordinary indorsement. But in the peculiar manner in which the affair was pursued, no motion or request being made to the Judge to give the instruction stated in the 4th error, we are constrained to decide, that neither of the errors is well assigned ; and we affirm the judgment.

We feel less reluctance in coming to this conclusion, because our decision does not preclude the plaintiff from commencing a new

action, if he apprehends, that he is furnished with sufficient proof to sustain it. See 1 *Pick.* 371, *Bridge et al.* v. *Sumner.*